Alden J. Parker, State Bar No. 196808
E-mail: aparker@weintraub.com
Daniel C. Kim, State Bar No. 272680
E-mail: dkim@weintraub.com
**weintraub tobin** chediak coleman grodin
a law corporation
400 Capitol Mall, 11th Floor
Sacramento, California 95814
(916) 558-6000 – Main
(916) 446-1611 – Facsimile

Attorneys for Plaintiff,
SGI RESORT PROPERTIES, LLC,
THE SCHOMAC GROUP, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| SGI RESORT PROPERTIES, LLC, an Arizona limited liability corporation, and THE SCHOMAC GROUP, INC., an Arizona corporation<br><br>          Plaintiffs,<br><br>     vs.<br><br>BRETT ROSSELLI, an Individual; NICOLE BRUSO, an Individual; and DOES 1 through 20, inclusive,<br><br>          Defendants, | Case No.<br><br>**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiffs SGI RESORT PROPERTIES, LLC, and THE SCHOMAC GROUP, INC., ("Plaintiffs") allege and complain against BRETT ROSSELLI ("Rosselli"), NICOLE BRUSO ("Bruso"), an Individual; and Does 1 to 20 (collectively "Defendants") as follows:

### JURISDICTION AND VENUE

1.    This Court has diversity jurisdiction pursuant to 28 U.S.C. §1332 because this controversy is between citizens of different states, and the sum value of the amount in

1   controversy exceeds $75,000, exclusive of costs and interests. Supplemental jurisdiction over

2   the claims based on California law is proper pursuant to 28 U.S.C. §1367.

3         2.      This Court has personal jurisdiction over Defendant because he is domiciled in

4   the County of Plumas, State of California.

5         3.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because

6   defendant resides in this judicial district and because a substantial part of the events or

7   omissions giving rise to the claims at issue occurred within this judicial district.

8                              NATURE OF THE ACTION

9         4.      This action seeks redress for a malicious scheme by Defendants to use Plaintiffs'

10  confidential business information in order to intentionally interfere with prospective economic

11  advantages and unlawfully obtain Plaintiffs' business. Defendants are further engaging in the

12  publication of malicious lies to defame Plaintiffs' business and cause further permanent

13  damage to Plaintiffs' business reputation in the area. As a result of Defendants' unlawful

14  conduct, Plaintiffs' business relations have been damaged and Plaintiffs stand to lose a

15  substantial amount of money in damages. Temporary, preliminary, and permanent injunctive

16  relief from the Court is needed in order to prevent further and irreparable damage to Plaintiffs

17  and its business operations.

18                                 THE PARTIES

19        5.      Plaintiff SGI RESORT PROPERTIES, LLC is an Arizona Corporation with its

20  principal place of business in Tucson, Arizona.

21        6.      Plaintiff THE SCHOMAC GROUP, INC. is an Arizona Corporation with it

22  principal place of business in Tucsan, Arizona.

23        7.      Plaintiffs are informed and believe and thereon allege that Defendant Rosselli is

24  a resident of the State of California and is over the age of 18.

25        8.      Plaintiffs are informed and believe and thereon allege that Defendant Nicole

26  Bruso is a resident of the State of California and is over the age of 18.

27        9.      The true names and capacities of Does 1 to 20 inclusive are unknown to

28  Plaintiffs who therefore sue these Defendants by such fictitious names. Once such Doe may be

**weintraub tobin** chediak coleman grodin
law corporation

Complaint for Injunctive Relief and Damages

a Company who Defendant Rosselli has worked as an agent for. However, at this time Plaintiffs believe Defendant Rosselli was acting independently from any Company. If it is later discovered that he was acting as an agent for a Company, Plaintiffs will seek leave to amend this complaint and add the additional company defendant. In addition, Plaintiffs pray for leave to amend this complaint to show the true names and capacities of said Does when the same have been ascertained. Plaintiffs are informed and believe and thereon allege that each of said Does is responsible for the actions hereinafter alleged and described.

10. Upon information and belief, at all times herein mentioned, each Defendant acted individually and/or as the agent, co-conspirator, aider, abettor, joint venturer, alter ego, third party beneficiary, employee, officer, director or representative of the other Defendants and in doing the things hereinafter alleged, acted within the course and scope of such agency, employment or conspiracy, and with the consent, permission and authorization of each of the remaining Defendants. Upon information and believe all actions of each Defendant as alleged in the claims for relief stated herein were ratified and approved by every other Defendant or their officers, directors or managing agents.

## GENERAL ALLEGATIONS OF FACT

### A. The Nakoma Golf Resort & Spa.

11. Nakoma Golf Resort & Spa ("Nakoma") is located at 348 Bear Run, Clio, California, 96106, in Plumas County, Calfornia. It is owned and operated by Plaintiffs and provides golf, resort spa services, restaurants and bars, snowshoeing and innertube rentals, and lodging.

12. In addition to operating as a golf resort and spa, Nakoma also hosts special events such as wedding ceremony and receptions, rehearsal dinners, family or school reunions, conferences, private parties for holidays, birthdays, anniversaries, engagements, and any other occasion worthy of a special celebration.

13. Nakoma's exceptional setting is in beautiful Eastern Plumas County, California near Graeagle. The Nakoma lodge was designed in 1923 by the world-renowned architect

///

weintraub tobin chediak coleman grodin
law corporation

1  Frank Lloyd Wright and built in 2001. The unique architecture and scenic surroundings ensures

2  for the hosting of memorable special events.

3  **B.      Plaintiffs' Confidential Business Information.**

4       14.    As part of Nakoma's business operations as a resort and spa, Plaintiffs receive,

5  develop, and maintain "Confidential Business Information," including without limitation, the

6  following: customer files with information including customer contact information, customer

7  ordering needs and requirements, Plaintiffs internal business information, including without

8  limitation, pricing information, cost of materials information, strategic and marketing plans,

9  financial management information, operating policies and other business procedures

10 customized for its operation as a popular golf resort and spa.

11      15.    As part of Nakoma's business operations as a special event location, Plaintiffs

12 receive, develop, and maintain "Confidential Business Information," regarding vendors that

13 supply products and services for the special events held at Nakoma, including without

14 limitation, the following: vendor files with information including vendor contact information,

15 vendor ordering needs and requirements, pricing information, cost of services and materials

16 information, strategic and marketing plans, financial management information, operating

17 policies and other business procedures customized for its operation as special event location.

18      16.    Plaintiffs take, and at all times relevant hereto has taken, reasonable and

19 appropriate measures to maintain the secrecy of its Confidential Business Information.

20 Plaintiffs' Confidential Business Information is disclosed to employees only on a need-to-know

21 basis and all Plaintiffs' employees are prohibited from disclosing Confidential Business

22 Information without authorization from Plaintiffs.

23      17.    Plaintiffs own and operate numerous computers, computer systems and

24 computer networks that have been used and will continue to be used to conduct Plaintiffs'

25 business operations both inside and outside California. Plaintiffs issue passwords to its

26 employees who have access to its computer networks in order to limit access to its Confidential

27 Business Information maintained on those computers. Plaintiffs' employees are assigned a

28 unique computer user name and password and their ability to ascertain certain Plaintiffs'

**weintraub tobin** chediak coleman grodin
law corporation

**weintraub tobin** chediak coleman grodin
law corporation

Confidential Business Information is restricted as warranted by their job duties and responsibilities. An employee's right to access Plaintiffs' computer systems are terminated at the end of that employee's employment with Plaintiffs.

18.    The substantial investment of time and money by Plaintiffs in gathering this Confidential Business Information and maintaining its secrecy has resulted in Plaintiffs being able to serve its customer needs and achieve its business objectives. Plaintiffs' Confidential Business Information is not generally known, available to, or ascertainable by the public or Plaintiffs' competitors.

C.    **Defendants' Scheme to Unfairly Compete with Plaintiffs.**

19.    Rosselli was hired by Plaintiffs and worked for them until December 15, 2015.

20.    Upon information and belief, immediately following his termination and possibly even before, Rosselli began to conspire with others and devised a scheme to personally, and with the help of others, notably his girlfriend and co-defendant Nicole Bruso, defame and damage Plaintiffs' business reputation and business relationships and to intentionally interfere with Plaintiffs' current and prospective customers of Nakoma.

Rosselli's Attack Using the Cherish Park Letter

21.    On December 12, 2015, a Nakoma employee by the name of Cherish Park resigned from her employment with Nakoma, where she worked as a front desk receptionist and a runner/buser for the restaurant. Following her resignation, she wrote a letter to management at Nakoma alleging various malicious, false, and defamatory statements, including sexual harassment, illegal hiring of undocumented foreign citizens, and other frivolous accusations (the "Park Letter").

22.    On December 15, 2015, Rosselli republished the defamatory statements by e-mailing a third party business associate of Nakoma's, Chris David, a copy of the Park Letter, furthering his conspiracy to maliciously defame Nakoma to third parties.

Rosselli's Attack on the Twenty Mile House-related Reservation

23.    On December 17, 2015, a Nakoma employee received a call from a very upset customer who had reservations to get married at the Twenty Mile House (a wedding

venue in the area) in summer 2016 and had block reservations at Nakoma relating to the special event. The customer informed Nakoma that she and her guests had received disturbing emails from Rosselli and was relieved to hear that he was no longer employed by Nakoma and expressed "serious aggravation at the experience." On information and belief, Rosselli was attempting to interfere with the lodging reservations set for Summer 2016 at Nakoma.

24.     On December 18, 2015, a Nakoma manager received an email from a business associate, Kevin Gage, at the Twenty Mile House stating:

*"Hi Dan,*

*You may know but as a courtesy I thought I would share the professionalism of your former employee's email. As with most area businesses I too struggle with employees and some of the challenges of working in our area.*

*Best of luck and I look forward to working together this coming season. We have and will have a fair amount of guests staying at Nakoma and I would of course be happy to offer any event rental items you need.*

*Kind Regards,"*

25.     The email from Kevin Gage also forwarded an email from Rosselli which stated:

*"Kevin*

*I may have some groups for you. I will get a list together and tell the brides that we have potentially booked to call you as an option.*

*-------*

*I apologize to inform you that Nakoma and I have had a falling out. I will not be available to help your group. I have no idea who will because they are down to less than a Skelton crew.*

*I have not been happy with their quality and the constant promises to make the resort better. I cannot work with a group that lies to their managers and falsely represents a product. I would look for another venue. They have run off and fired most of the good people there. I would not in good Conscience tell you that your retreat will go well or smoothly.*

weintraub tobin chediak coleman grodin
law corporation

1   *I am sorry about this and of course call me for details at your convenience. The*
2   *main issue is that the Gm dan Gallagher who background is a bad home builder*
3   *at best is in charge and in way over his head. The villas are mouse and rat*
4   *infested and dan refuses to fix it ("he blames it on nature"). That is just one*
5   *example. They have not paid many of their bills as well so I could not order any*
6   *products for the guests. They are late on payroll, etc. the place has a huge cash*
7   *flow problem and has gone BK once already.*
8   *Again I apologize and Call me if you have any questions."*

9   Both of these emails were intentionally designed to maliciously and falsely defame Nakoma
10  and to intentionally interfere with its business relationships and future economic advantages.

11  26.   Rosselli forwarded the same email in paragraph 25, *supra*, to a Sarah Bonney
12  on December 17, 2015.

13  **Rosselli's Other Misconduct Against Nakoma**

14  27.   On December 17, 2015, a Nakoma employee received a call from a bride
15  booking a wedding that Rosselli told her that "Nakoma is going bankrupt." This is an entirely
16  false statement, maliciously published to a potential customer of Nakoma's for the sole
17  purpose of damaging Plaintiffs' business reputation and interfering with a potential business
18  advantage.

19  28.   On December 15, 2015, Rosseli sent a text message to a Nakoma employee,
20  Will Broad, stating: "So they fired me. The fucking place is falling apart as usual. Dan is about
21  to catch a ton of shit. Under age sexual harassment to an employee. Wow!!!!! What a fuckin
22  loser." Shortly thereafter, he followed up with, "watch your back."

23  29.   Upon information and belief, while Rosselli remained employed by Plaintiffs,
24  Rosselli took affirmative steps to conspire with others to steal Plaintiffs' Confidential Business
25  Information and unlawfully solicit and divert Plaintiffs' current and prospective customers in
26  order to damage Plaintiffs' business.

27  30.   Upon information and belief, Rosselli's unlawful conduct, included but is not
28  limited to the following acts: wrongfully misappropriating Plaintiffs' Confidential Business

Complaint for Injunctive Relief and Damages
{1991738.DOC;}

1  Information and providing and/or using such information in connection with his preparation to

2  damage Nakoma's business reputation and compete with Plaintiffs; breaching his duty of

3  loyalty and fiduciary duties while still employed by Plaintiffs; soliciting and diverting Plaintiffs'

4  current and prospective customers away from Nakoma while still employed by Plaintiffs.

5        31.    As explicit evidence of Rosselli's collective misconduct, at some point during the

6  week following his termination, Rosselli texted a Robert Hickman, a direct competitor of

7  Nakoma, with the following message: "Dan fired me this week after I booked him over

8  500,000 in group business for 2016. I in the last 24 hours removed 150,000 of that. I have

9  some groups that need places to stay. Do you what [sic] to talk about seeing what dates you

10 may have available to accord ate them [sic]? Dan has die [sic] it again and fucked himself and

11 Nakoma. The dwarf doesn't learn."

**FIRST CLAIM FOR RELIEF**

**Defamation/Slander Per Se**

14       32.    Plaintiffs restate and incorporate paragraphs 1 through 30 as though full set

15 forth below.

16       33.    Plaintiffs are informed and believe and thereon allege that Defendants have been

17 informing potential customers and/or vendors of malicious falsities regarding Nakoma's business

18 operations and management. Defendants' oral and written statements constitute false and

19 unprivileged publication, and on information and belief, were made with malice and not in

20 furtherance of any litigation purpose or objective.

21       34.    Defendants' false and unprivileged publications are defamatory on their face

22 because they directly charge and imply that Plaintiffs' business operations are problematic and

23 failing, or that their management is liable for sexual harassment, the illegal hiring of

24 undocumented foreign citizens, or other criminal or illegal activity.

25       35.    Plaintiffs are informed and believe and thereon allege that Defendants false and

26 unprivileged publications were understood by one or more recipients as being of and concerning

27 Plaintiffs.

28 ///

**weintraub tobin** chediak coleman grodin
law corporation

36.    The false and unprivileged communications by Defendants have the natural tendency to damage the reputation of Plaintiffs. As a proximate result of the false and unprivileged publications by Defendants, Plaintiffs have suffered loss of reputation, shame, mortification, and hurt feelings all to their detriment.

37.    At all times mentioned herein, Defendants acted willfully with the wrongful intention of injuring Plaintiffs and for an improper and evil motive amounting to malice in that the afore-referenced conduct was intentionally committed by Defendants that was knowingly oppressive, malicious and wanton with the intended purpose to cause harm to Plaintiffs. Plaintiffs thus are entitled to recover punitive damages from Cross-Defendant.

WHEREFORE, Plaintiffs request relief as herein provided.

## SECOND CAUSE OF ACTION

### Trade Libel

38.    Plaintiffs restate and incorporate paragraphs 1 through 37 as though full set forth below.

39.    Defendants have made false and defamatory statements regarding Plaintiffs and their employees and Defendants' knew such statements were false at the time they were made. Specifically, Defendants' have been informing potential customers and/or vendors of malicious falsities regarding Nakoma's business operations and management. Defendants' oral and written statements constitute false and unprivileged publication, and on information and belief, were made with malice and not in furtherance of any litigation purpose or objective.

40.    These statements are in fact false.

41.    Plaintiffs are informed and believe and thereon allege that one or more recipients of this information understood that the statements made therein were made of and concerning Plaintiffs.

42.    The statements were made with malice in an attempt to injure Plaintiffs' business and business reputation and for the sole purpose of injuring Plaintiffs' reputation with current and potential customers and vendors.

///

**weintraub tobin** chediak coleman grodin
law corporation

43. As a result of such trade libel, Plaintiffs have suffered injury and damage to business and goodwill in an amount to conform to proof at the time of trial but in no event less than the jurisdictional minimum of this Court.

44. Because the actions of Defendants were committed with malice and intent to injure, Plaintiffs are entitled to exemplary and punitive damages in a sum appropriate to punish Defendants.

WHEREFORE, Plaintiffs requests relief as herein provided.

### THIRD CLAIM FOR RELIEF

### Misappropriation of Trade Secrets – California UTSA

### Cal. Civ. Code §3426 et seq.

45. Plaintiffs restate and incorporate paragraphs 1 through 44 as though full set forth below.

46. Plaintiffs' Confidential Business Information as described above constitutes "trade secrets" within the meaning of section 3426.1 of the California Civil Code.

47. Prior to the wrongful acts alleged in this complaint, none of Plaintiffs' competitors possessed the valuable trade secret information that has been misappropriated by Defendants.

48. At all times relevant hereto, Plaintiffs made reasonable efforts to ensure that the confidential and proprietary trade secrets misappropriated by Defendants remained proprietary, secret and available only for Plaintiffs' commercial and business use. Such efforts included, but were not limited to:

a. disclosing the afore-mentioned trade secrets only to those employees with a need to know in order to perform their job duties;

b. emphasizing to each employee the company's need to keep such information confidential; and

49. As alleged above, Defendants misappropriated Plaintiffs' trade secrets by improper means without Plaintiffs' express or implied consent.

///

weintraub tobin chediak coleman grodin
law corporation

Complaint for Injunctive Relief and Damages

50.    Defendants knew or had reason to know at the time of disclosure of Plaintiffs' trade secrets that this Confidential Business Information was acquired under circumstances giving rise to a duty on the part of Defendants to maintain its secrecy.

51.    All of the aforesaid intentional and wrongful acts by Defendants proximately caused substantial damage to Plaintiffs, including but not limited to, loss of sales and the profits therefrom, such actual amount to be determined according to proof at the time of trial.

52.    As a further proximate result of Defendants' misappropriation of Plaintiffs' trade secrets, Defendants have been unjustly enriched as a result of Defendants' wrongful acts. The amount of this unjust enrichment cannot presently be ascertained and Plaintiffs will move to amend this complaint to specify the amount when it becomes known to Plaintiffs or on proof thereof to seek restitution from Defendants.

53.    In the event that neither Plaintiffs' actual damages nor Defendants' unjust enrichment are conducive to proof, Plaintiffs are entitled to a reasonable royalty of the revenue received by Defendants by sales consummated and derived from the use of Plaintiffs' trade secrets as provided by California Civil Code section 3426.3(b).

54.    Defendants committed the acts alleged maliciously, fraudulently and oppressively with the wrongful intention of injuring Plaintiffs, from an improper and evil motive amounting to malice and in conscious disregard of Plaintiffs' rights. Plaintiffs are thus entitled to recover, in addition to the damages set forth above, exemplary and punitive damages in the form of twice the combined sum of the compensatory, restitutionary and/or reasonable royalty damages from Defendants as provided by California Civil Code section 3426.3(c), plus an award of reasonable attorneys' fees as provided by California Civil Code section 3246.4 in amounts according to proof at trial.

55.    The wrongful conduct of Defendants in: (a) misappropriating Plaintiffs' trade secrets; and (b) continuing to disclosure and/or utilize said information for Defendants' own benefit and to the great detriment of Plaintiffs' business, unless and until enjoined and restrained by court order, will cause great and irreparable damage in the loss of Plaintiffs' customers, as well as the loss of Plaintiffs' goodwill and reputation in the solar heating industry.

weintraub tobin chediak coleman grodin
law corporation

Plaintiffs have no adequate remedy at law for such present and future harm and therefore is entitled to preliminary and permanent injunctive relief against Defendants to prohibit such inevitable harm. In the alternative, Plaintiffs would be forced to maintain an unbearable multiplicity of judicial proceedings to protect its interests. Therefore, Plaintiffs are additionally entitled to preliminary and permanent injunctive relief pursuant to section 3426.2 of the California Civil Code, among others.

WHEREFORE, Plaintiffs requests relief as herein provided.

## FOURTH CLAIM FOR RELIEF

### Conversion

56.    Plaintiffs restate and incorporate paragraphs 1 through 55 as though full set forth below.

57.    At all times herein mentioned, Plaintiffs was and still is the owner, and was and still is entitled to possession of, the personal property wrongfully converted by Defendants, including but not limited to, the Confidential Business Information specified above.

58.    Plaintiffs are informed and believe and thereon allege that Defendants have converted Plaintiffs' property described above for their own use and benefit and to Plaintiffs' detriment. Such interference was substantial in that it has resulted in the loss of revenue to Plaintiffs and/or deprived Plaintiffs of the fruits of its labor and investments made in researching and developing the confidential, proprietary and trade secret information described above.

59.    As a proximate result of Defendants' actions, Plaintiffs have lost and will continue to lose revenues and profits therefrom, such actual amount to be determined according to proof at trial.

60.    As a proximate result of Defendants' conversion, Plaintiffs have lost and will continue to lose the benefits of its considerable investment of resources in research and development which culminating in the above-mentioned property, all to Plaintiffs' damage in an amount to be determined according to proof at trial.

///

///

weintraub tobin chediak coleman grodin
law corporation

Complaint for Injunctive Relief and Damages

61.   Defendants' acts alleged above were willful, wanton, malicious and oppressive and were taken with the intent to defraud, thereby justifying the awarding of exemplary and punitive damages.

WHEREFORE, Plaintiffs requests the relief as herein provided.

## FIFTH CLAIM FOR RELIEF

### Interference with Prospective Economic Advantage

62.   Plaintiffs restate and incorporate paragraphs 1 through 61 as though fully set forth below.

63.   Plaintiffs have invested substantial capital and effort to develop and maintain its current and prospective customer relationships. These relationships represent the probability of future economic success to Plaintiffs and upon which Plaintiffs rely on in meeting its financial goals.

64.   Defendants were aware of these current and prospective economic relationships and Defendants engaged in wrongful and non-privileged conduct, including but not limited, misappropriating and exploiting Plaintiffs' valuable Confidential Business Information, using Plaintiffs' Confidential Business Information to solicit Plaintiffs' current and prospective customers, and/or otherwise breaching (and conspiring to or aiding and abetting with the breach of) contractual and fiduciary duties and duties of loyalty owed to Plaintiffs. These acts were intended to and have actually disrupted and/or are expected to disrupt those economic relations upon which Plaintiffs have relied, including Plaintiffs' expected business of continuing to sell products and services to these current and prospective customers. These disruptive acts have resulted in substantial damage to Plaintiffs, including but not limited to, loss of annual revenue and the profits therefrom, such actual amount to be determined according to proof at trial.

65.   Defendants committed the acts alleged above maliciously, fraudulently, and oppressively, with the wrongful intention of injuring Plaintiffs from an improper and evil motive amounting to malice and in conscious disregard of Plaintiffs' rights. Plaintiffs are entitled to ///

1   recover exemplary and punitive damages from Defendants in an amount according to proof at

2   trial.

3          WHEREFORE, Plaintiffs requests relief as herein provided.

4                              SIXTH CLAIM FOR RELIEF

5                    Violation of the California Unfair Competition Law

6                        and Common Law Unfair Competition

7          66.    Plaintiffs restate and incorporate paragraphs 1 through 65 as though full set

8   forth below.

9          67.    As set forth above, Plaintiffs are informed and believe and thereon allege that

10  prior to the cessation of Rosselli's employment with Plaintiffs and continuing to the present,

11  Defendants have misappropriated, for purposes of Defendants' personal profit, the valuable

12  Confidential Business Information of Plaintiffs which it developed and possessed for use in its

13  own business.

14         68.    As set forth above, Plaintiffs are informed and believe and thereon allege that

15  Defendants intentionally and wrongfully utilized Plaintiffs' Confidential Business Information

16  and other converted property and intentionally and wrongfully solicited Plaintiffs' current and

17  prospective customers for the purpose of gaining an unfair competitive advantage over

18  Plaintiffs for their own personal benefit and profit.

19         69.    As set forth above, Plaintiffs are informed and believe and thereon allege that

20  Defendants intentionally and wrongfully utilized Plaintiffs' Confidential Business Information

21  and other converted property and intentionally and wrongfully solicited Plaintiffs' customers for

22  the purpose of harming Plaintiffs' business.

23         70.    As set forth herein, Plaintiffs are informed and believe and thereupon allege that

24  Defendant Rosselli breached his fiduciary and/or contractual duties and/or duties of loyalty to

25  Plaintiffs and that other Doe defendants aided and abetted Rosselli in the breach of such duties

26  in order for Defendants' to gain an unfair competitive advantage over Plaintiffs for Defendants

27  own benefit and profit.

28  ///

weintraub tobin chediak coleman grodin
law corporation

71.     The aforesaid conduct by Defendants was calculated to give Defendants an unfair competition over Plaintiffs and resulted in Defendants engaging in unfair, predatory competition adversely impacting Plaintiffs' business, reputation and goodwill, and the valuation of its products and services.

72.     Defendants engaged in the aforesaid scheme by maliciously and intentionally taking these actions, each of which constitute wrongful acts in violation of California Business and Professions Code section 17200, et seq., as well as California common law prohibiting unfair competition.

73.     Plaintiffs are further informed and believe and thereon allege that the aforesaid wrongful acts by Defendants with resulting damages to Plaintiffs are ongoing and certain to continue. Such wrongful acts that Defendants are doing and continue to do in the future will, unless restrained, cause irreparable damage to Plaintiffs.

74.     For such current and future wrongful conduct by Defendants while certain to inflict serious harm to Plaintiffs, there exists no adequate remedy at law. Pursuant to section 17203 of the California Business and Professions Code, Plaintiffs are therefore entitled to preliminary and permanent injunctive relief against Defendants to prohibit such certain harm.

75.     As a proximate result of Defendants' actions and common law unfair competition, Plaintiffs have lost and will continue to lose revenues and the profits therefrom, all to Plaintiffs' damage in an actual amount to be determined according to proof at trial.

WHEREFORE, Plaintiffs requests relief as herein provided.

## SEVENTH CLAIM FOR RELIEF

### Civil Conspiracy

76.     Plaintiffs restate and incorporate paragraphs 1 through 80 as though full set forth below.

77.     Plaintiffs are informed and believe and on that basis allege that the Defendants combined with each other for the purpose of willfully and maliciously injuring Plaintiffs and their business. Despite their full knowledge of the confidentiality obligations and restrictions imposed upon Rosselli, Defendants and each of them agreed to improperly disclose and use

weintraub tobin chediak coleman grodin
law corporation

weintraub tobin chediak coleman grodin
law corporation

Plaintiffs' Confidential Business Information for Defendants' own benefit and to the detriment of Plaintiffs.

78.     Plaintiffs are informed and believe and on that basis allege that Defendants formed a conspiracy for the purpose of unlawfully advancing Defendants' economic interests, including misappropriating Plaintiffs' Confidential Business Information, breaching fiduciary duties or duties of loyalty owed to Plaintiffs, converting Plaintiffs' property, and doing the things alleged herein, all to the detriment of Plaintiffs' economic interest.

79.     In engaging in the wrongful course of conduct and committing the specific wrongful acts and practices complained of above, each of which constitutes a civil wrong for which the law provides redress, Defendants had a common plan and acted in furtherance of the plan in concert with each other including aiding and abetting each other in advancing Defendants' economic interest and to the detriment of Plaintiffs' economic interest.

80.     Each Defendant sued herein was the co-conspirator of the other and was acting within the course and scope of a conspiracy formed amongst each of them.

81.     As a direct and proximate result of Defendants' conspiracy, Plaintiffs have sustained and will continue to sustain damages in an amount to be proven at trial.

82.     Plaintiffs alleges on information and belief that the acts of Defendants and each of them were fraudulent, willful, malicious and oppressive which has subjected Plaintiffs to unjust hardship and conscious disregard of Plaintiffs' rights so as to justify an award of punitive damages for the sake of example and by way of punishment.

WHEREFORE, Plaintiffs requests relief as herein provided.

## EIGHTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty and Duty of Loyalty

### (Against Defendant Rosselli Only)

83.     Plaintiffs restate and incorporate paragraphs 1 through 82 as though full set forth below.

84.     As an employee of Plaintiffs, Defendant Rosselli had access to Plaintiffs' Confidential Business Information and owed a fiduciary duty and a duty of loyalty to Plaintiffs.

The foregoing alleged actions of Defendant Rosselli constitutes a willful breach of his fiduciary duties and duties of loyalty owed to Plaintiffs.

85.     As a direct and proximate result of Rosselli's actions to harm Plaintiffs, Plaintiffs suffered, and continues to suffer, great damages, including harm to their business, goodwill and reputation in such an amount to be determined according to proof at trial.

86.     Defendant Rosselli committed the acts alleged above maliciously, fraudulently and oppressively with the wrongful intention of injuring Plaintiffs from an improper and evil motive amounting to malice and in conscious disregard of Plaintiffs' rights. Plaintiffs are thus entitled to recover punitive damages from Defendant Rosselli in amount according to proof at trial.

WHEREFORE, Plaintiffs requests relief as herein provided.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against Defendants as follows:

1.     For an award of compensatory and consequential damages;

2.     For an award of statutory damages;

3.     For an award of exemplary and punitive damages;

4.     For preliminary and permanent injunctive relief, including but not limited to, an order requiring Defendants to return all copies of Plaintiffs' Confidential Business Information, including but not limited to, confidential, proprietary and trade secret information to Plaintiffs; prohibiting Defendants from using any of Plaintiffs' confidential, proprietary and trade secret information for any purpose whatsoever; and prohibiting Defendants from contacting or soliciting any of Plaintiffs' current or prospective customers;

5.     For an award of costs and interest at the appropriate legal rate; and

6.     For all other relief as the Court may deem just and proper.

Respectfully submitted.

Dated: December 21, 2015              **weintraub tobin** chediak coleman grodin
                                       law corporation

                                       */s/ Alden J. Parker*

                                       By:_____
                                           Alden J. Parker
                                       _____

DEMAND FOR JURY TRIAL

Plaintiff Plaintiffs, Inc. hereby requests a trial by jury provided by Rule 38 of the Federal Rules of Civil Procedure.

Respectfully submitted.

Dated: December 21, 2015

**weintraub tobin** chediak coleman grodin
law corporation

/s/ Alden J. Parker

By:_____

Alden J. Parker